1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
ROBERTA PICU and SERVER PICU,          )
                                                          )
                                Plaintiff,               )      No. C14-00330RSL
                                                          )
               v.                                         )
                                                          )      ORDER GRANTING IN PART
MARIANA BOT, individually and as a       )      DEFENDANTS' MOTION TO
member of a marital community; DOREL    )      DISMISS
BOT, individually and as a member of a     )
marital community, and DUVALL ADULT    )
FAMILY HOME,                                      )
                                                          )
                                Defendants.            )
_____)

16      This matter comes before the Court on "Defendants' Partial Motion to Dismiss Plaintiffs'

17   Complaint." Dkt. # 5. Plaintiffs assert multiple claims for defendants' failure to pay plaintiffs'

18   full wages. Defendants seek dismissal of four of plaintiffs' claims: (1) minimum and overtime

19   wages under the Fair Labor Standards Act ("FLSA"), (2) double damages under RCW 49.52.050

20   and RCW 49.52.070, (3) fraud and/or negligent misrepresentation; and (4) a claim under the

21   Washington Consumer Protection Act. In the context of a motion to dismiss under Fed. R. Civ.

22   P. 12(b)(6), the allegations of the complaint are accepted as true and construed in the light most

23   favorable to plaintiff. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO,

24   Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). The question for the Court is whether the

25   well-pled facts in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp.

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS

1    v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not provide detailed factual

2    allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic

3    recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. If the complaint fails

4    to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal

5    is appropriate. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

6        Having reviewed the parties' memoranda, the Court finds as follows:

7    **BACKGROUND**

8        Plaintiffs assert various claims regarding defendants' alleged failure to pay proper wages

9    while plaintiffs were employed at Duvall Adult Family Home ("DAFH"). Plaintiffs, a married

10   couple, served as live-in attendants and provided care to DAFH's elderly and disabled residents.

11   Plaintiffs allege that defendants agreed to pay each plaintiff $3,000.00 per month plus room and

12   board pursuant to an oral contract. They allege that defendants failed to provide Mrs. Picu with

13   any compensation at all and failed to pay Mr. Picu overtime wages during their periods of

14   employment with defendants. In addition, plaintiffs assert that defendants made material and

15   false representations and supplied false information about the terms of plaintiffs' employment.

16   Finally, Mrs. Picu alleges that defendants' failure to pay her wages was "an unfair or deceptive

17   act or practice in trade or commerce" that injured her.

18   **DISCUSSION**

19   **1. Fair Labor Standards Act**

20       Defendants argue that plaintiffs do not state a claim for minimum wages and overtime

21   wages under the FLSA because two exemptions apply: the companionship exemption, 29 U.S.C.

22   § 213(a)(15), and the domestic service employee exemption, 29 U.S.C. § 213(b)(21). See Motion

23   to Dismiss (Dkt. # 5) at 4.

24   **The Companionship Exemption**

25       The companionship exemption relieves employers of their duty to pay federally required

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                      -2-

minimum and overtime wages to "any . . . employee employed in domestic service employment
to provide companionship services for individuals who (because of age or infirmary) are unable
to care for themselves . . . ." 29 U.S.C.§ 213(a)(15). "The term 'domestic service employment'
refers to services of a household nature performed by an employee in or about a private home."[1]
29 C.F.R.§ 552.3. Plaintiffs assert the exemption does not apply because the adult family home
where plaintiffs provided services is not a "private home." Response (Dkt. #6) at 5.

Defendants rely on <u>Park v. Choe</u> to argue that adult family homes in Washington are
"private homes" for the purposes of the companionship exemption. C06-5456RJB, 2007 WL
2677135 (W.D. Wash. Sept. 10, 2007). This case dismissed a wage claim under the FLSA on
summary judgment, finding the companionship exemption applied to two caregivers who
worked at a licensed adult family home. <u>Id.</u> at 6. However, the court did not hold that *all* adult
family homes in Washington are private homes; rather, it found that the particular "home in
question here" had distinctive characteristics that made it "private" for the purposes of the
exemption. <u>Id.</u> (discussing the ownership of the home, the permanency of residents, and whether
the home was open to the public).

In determining what constitutes a "private home" under the companionship exemption,
other courts and the Department of Labor apply a multi-factor test stemming from the Tenth
Circuit's decision in <u>Welding v. Bios Corp.</u>, 353 F.3d 1214 (10th Cir. 2004). The <u>Welding</u>
factors consider whether a home is "private" for the companionship exemption based on:
(1) whether the client lived in the living unit before receiving the services; (2) who owns the
living unit; (3) who manages and maintains the residence; (4) whether the client could live there
without contracting for the provider's services; (5) whether the cost/value of the living unit is a

---

[1] Contrary to plaintiffs' argument, the home need not be owned by the employer for the exemption to apply. <u>See</u> <u>Long Island Care at Home, Ltd. v. Coke</u>, 551 U.S.158 (2007) (holding a more specific regulation that allows third-party employers to claim the companionship exemption trumped the more general regulation requiring the services to be performed in the employer's home).

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                    -3-

large portion of maintaining it; and (6) whether the provider uses part of the residence for its own business purposes. Id. at 1219. The inquiry depends on the facts and circumstances of each living unit; "no single factor is dispositive." Id. at 1218-19. Although Park did not consider these factors and the Ninth Circuit has not determined the proper test, many courts outside the Tenth Circuit define "private home" by analyzing the Welding factors. See Thompson v. Blesssed Home Inc., 5:13-CV-71-BO, 2014 WL 2085310 (E.D.N.C. May 19, 2014); Murray v. Mary Glynn Homes, Inc., 1:11 CV 00532, 2013 WL 4054595 (N.D. Ohio Aug. 12, 2013); Lochiano v. Compasionate Care, LLC, 10-01089-CV-W-DGK, 2012 WL 4059873 (W.D. Mo. Sept. 14, 2012); Threatt v. CRF First Choice, Inc., 1:05CV117, 2006 WL 2054372 (N.D. Ind. July 21, 2006); see also Chapman v. A.S.U.I. Healthcare and Development Center, No. 13-20081, 2014 WL 351868 (5th Cir. Feb. 3, 2014) (finding the home was not a "private home" under the companionship exemption; cites to Welding but does not specifically apply all six factors). In addition, the Department of Labor has recently endorsed this approach along with other factors. Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60462 (Oct. 1, 2013) ("In evaluating whether a residence is a private home, the Department considers the six factors identified by the Tenth Circuit in Welding as well as other factors identified in Johnston, Linn and Lott" (citation omitted)).

Plaintiffs have pleaded sufficient facts to avoid dismissal based on the companionship exemption. In their complaint, plaintiffs allege that DAFH is an "'adult family home' as defined by WAC 388-76-10000."[2] When viewed in the light most favorable to the plaintiffs, the key statutory and administrative language defining adult family homes in Washington and the

---

[2] RCW 70.128.010 defines "adult family home" as "a residential home in which a person or persons provide personal care, special care, room, and board to more than one but not more than six adults who are not related by blood or marriage to the person or persons providing the services." A person or entity must be "licensed to provide personal care" to open an adult family home. WAC 388-76-10000.

allegations in plaintiffs' complaint are sufficient to raise a plausible inference that the adult family home where plaintiffs worked is not a "private home" for purposes of the companionship exemption.[3]

First, there is no indication that a client of DAFH "lived in the living unit as his or her private home before beginning to receive the services," which would be a "powerful indicator that the residence is a private home." Welding, 353 F.3d at 1219. However, there is also no information to indicate the clients did not live at DAFH before receiving services. Plaintiffs claim it is reasonable to infer that the clients did not live at DAFH based on the statutory definition and regulations of adult family homes, which limit the residents of such homes to those in need of services, their close relatives, and service providers or their representatives. See Response (Dkt. # 6) at 8. However, the Court finds this information does not address whether clients lived at the home before receiving services. Therefore, this factor weighs neither in favor nor against finding DAFH is a private home.

Second, plaintiffs adequately alleged that "the living unit is owned by the service provider," Welding, 353 F.3d at 1220, because plaintiffs' complaint claims "Dorel Bot and Mariana Bot owned DAFH." Complaint (Dkt. # 1) at 1. This is "a significant indicator that it is not a private home." Welding, 353 F.3d at 1220.

Third, it is reasonable to infer that the service provider, not the clients or the clients' families, provide "many of the essentials of daily living." Welding, 353 F.3d at 1220. The statute listing the requirements of adult family homes makes clear that "[t]he provider is ultimately

---

[3] Defendants assert DAFH is a private home because a "similar adult family home" was found to be private in Park in an order granting summary judgement. However, there is no specific information to show how similar DAFH is to the adult family home in Park. Based on the information before the Court at this early stage in the proceedings, plaintiffs' allegations are sufficient to raise a plausible inference that DAFH is not a private home. If discovery yields additional information about the nature of DAFH's operations that weigh in favor of considering DAFH a private home, defendants are free to raise this challenge in a motion for summary judgment.

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                           -5-

1    responsible for the day-to-day operations of each licensed adult family home." RCW

2    70.128.130. Additional responsibilities include: promoting the health and safety of residents;

3    maintaining the home's internal and external conditions; providing functioning utilities and

4    features; cleaning the residence, bedding, kitchen, and furnishings; and cooking and serving

5    meals. See generally WAC 388-76. Residents are not responsible for performing these services.

6    WAC 388-76-10635. The significant responsibilities of service providers in providing essentials

7    of daily living "weigh[] strongly in favor of it not being a private home." Welding, 353 F.3d at

8    1220.

9          Fourth, it is reasonable to infer that the clients would not be able to live in the home

10   without contracting for services, which "weighs in favor of it not being a private home."

11   Welding, 353 F.3d at 1220. Washington law requires adult family homes to provide specific

12   types of care and services to clients living there, and limits residence to those in need of services,

13   their close relatives, and service providers or their representatives or managers. See generally

14   WAC 388-76. Therefore, clients likely could not live at DAFH without contracting for services.

15         The fifth Welding factor assesses "the relative difference in the cost/value of the services

16   provided and the total cost of maintaining the living unit" in order to help determine the primary

17   purpose of the living unit. 353 F.3d at 1220. It is less likely that a home is a private home "[i]f

18   the cost/value of the services is a substantial portion of the total cost of maintaining the living

19   unit." Id. Given the significant services that adult family homes are required to provide to

20   residents under Washington law (including specific standards of care, WAC 388-76-10400), it is

21   reasonable to infer that the cost or value of these services is not incidental to other living

22   expenses. Therefore, this factor weighs against finding DAFH is a private home.

23         Sixth, "if the service provider uses some part of the residence for its own business

24   purposes, that weighs in favor of it not being a private home." Welding, 353 F.3d at 1220.

25   Plaintiffs' only support for this factor is that "DAFH was run as an adult family home" and

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                    -6-

1   "there is no indication that it was used for any other purpose." Response (Dkt. # 6) at 6.

2   However, even when viewed in the light most favorable to plaintiffs, this information does not

3   indicate whether the service provider used part of the residence for its own business purposes.

4   Therefore, this factor weighs neither in favor nor against DAFH's status as a private home.

5       Taking all of the factors into account, plaintiffs have raised a reasonable inference that

6   DAFH qualifies as an adult family home for purposes of the companionship exemption.

7   Therefore, the companionship exemption therefore does not bar plaintiffs' minimum wage and

8   overtime claims.

9   **The Domestic Service Employee Exemption**

10       Defendants next argue that the domestic service employee exemption applies. This

11   exemption covers "any employee who is employed in domestic service in a household and who

12   resides in such a household." 29 U.S.C. § 213(b)(21). These employees who "reside in the

13   household where they are employed" are entitled to minimum wages, but they are exempt from

14   overtime wages. 29 C.F.R. § 552.100(a). The exemption extends to employees "who are

15   employed by an employer or agency other than the family or household using their services." 29

16   C.F.R. § 552.109(c).

17       Like the companionship exemption, plaintiffs are not subject to the domestic service

18   employee exemption because they do not meet the definition of "employed in domestic service."

19   As described above, the term "employed in domestic service" in this statute means that the

20   services must be provided "in or about a private home." See 29 C.F.R. § 552.3.

21       Defendants argue that the "private home" requirement attaches only to the companionship

22   exemption, not the domestic service employee exemption. Park v. Choe found the "private

23   home" requirement did not apply to the domestic service employee exception. C06-5456RJB,

24   2007 WL 2677135 (W.D. Wash. Sept. 10, 2007). The court pointed out that the regulation

25   defining "employed in domestic service" specifically references the companionship exemption,

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS         -7-

29 U.S.C. § 213(a)(15), and does not reference the domestic service employee exemption, 29

U.S.C. § 213(b)(21). Id. at *4. While this is true, 29 C.F.R. § 552.3 does not specifically exclude

29 U.S.C. § 213(b)(21) from the definition of "employed in domestic service." No other portion

of the regulations provides a different definition. Without a different definition elsewhere in the

statute or the regulations, it is logical to conclude that the identical term should be given the

same meaning throughout the same section of the statute. The Department of Labor recently

considered the issue and agrees:

> Under the Department's existing regulations and interpretations, an employee will
> be considered to be a live-in domestic service employee under [29 C.F.R.]
> § 552.102 if the employee: (1) Meets the definition of domestic service
> employment under [29 C.F.R.] § 552.3 and provides services in a "private home"
> pursuant to [29 C.F.R.] § 552.101; and (2) resides on his or her employer's
> premises on a "permanent basis" or for "extended periods of time."

Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60473

(Oct. 1, 2013).

Because the live-in domestic service employee exemption requires plaintiffs to be

engaged in work in "a private home," the exemption does not apply for the same reasons

discussed above. Viewing the allegations in the light most favorable to plaintiffs, a plausible

inference arises that plaintiffs were not employed in a "private home." Defendants' motion to

dismiss plaintiffs' minimum and overtime wage claims under the FLSA is therefore DENIED.

**2. RCW 49.52.050 and .070**

Plaintiffs have sufficiently stated a claim for double damages and attorney's fees under

Washington law. An employer who willfully and intentionally deprives an employee of any part

of her wages or pays an employee a wage lower than what is required by statute or contract is

liable for twice the amount of damages plus attorney's fees and costs. RCW 49.52.050 and .070.

These damages are not available to employees who "knowingly submitted" to the violations.

RCW 49.52.050. There are no facts that suggest plaintiffs "knowingly submitted" to wage

violations. Defendants summarily assert in their reply that plaintiffs' double damages claim

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                         -8-

1   should be dismissed because their FLSA wage claims fail. Reply (Dkt. # 8) at 8-9. However, this

2   Court has allowed plaintiffs' FLSA claims to proceed. Plaintiffs have adequately alleged that

3   defendants willfully and intentionally withheld wages required by statute and contract,

4   Complaint (Dkt. # 1) at 13, and are therefore also entitled to proceed on a claim for double

5   damages under RCW 49.52.050 and .070. Defendants' motion to dismiss on this ground is

6   DENIED.

7   **3. Fraud and Negligent Misrepresentation**

8       Plaintiffs' fraud claim does not satisfy the heightened pleading standard of Fed. R. Civ. P.

9   9(b). Rule 9(b) requires a party asserting a claim of fraud to "state with particularity the

10   circumstances constituting fraud." Plaintiffs allege no such particular circumstances. A cause of

11   action for fraud requires nine elements that must be shown by clear, cogent, and convincing

12   evidence: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's

13   knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff;

14   (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation;

15   (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." Siley v. Block, 130

16   Wn.2d 486, 505 (1996).

17       Plaintiffs' fraud claim rests upon conclusory allegations with no factual support. For

18   example, plaintiffs claim that defendants "made representations to the Plaintiffs that were

19   material and false" and "supplied false information about the terms of the Plaintiffs'

20   employment," but do not give any suggestion what those false representations were. Complaint

21   (Dkt. # 1) at 14. Plaintiffs do not identify any particular facts that were supposedly

22   misrepresented, nor do they describe the who, what, when, or why of the offending statements.

23   The Court will not consider plaintiffs' argument that "defendants created fake contracts to avoid

24   paying" because this allegation was not included in plaintiffs' complaint and does not satisfy

25   Rule 9(b). Response (Dkt. # 6) at 18.

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                    -9-

1    Even under the more liberal pleading standard of Rule 8, plaintiffs fail to state a claim for

2    negligent misrepresentation. Although a complaint need not provide detailed factual allegations,

3    it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of

4    the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555. Plaintiffs' complaint simply

5    recites the basic elements of fraud and negligent misrepresentation claims without offering any

6    suggestion of what the purportedly false information was or why it was false. Therefore,

7    plaintiffs' fraud and negligent misrepresentation claims are DISMISSED.

8    **4. Washington Consumer Protection Act**

9    Plaintiff Roberta Picu pleads an alternative ground of relief under the Washington

10    Consumer Protection Act, RCW 19.86.020 ("CPA"). The CPA prohibits "[u]nfair methods of

11    competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

12    RCW 19.86.020. A private cause of action exists under the CPA if: (1) defendants committed an

13    unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacted the public interest,

14    (4) causing injury to plaintiff in her business or property, and (5) a causal link exists between the

15    unfair or deceptive act and the injury suffered. <u>Hangman Ridge Training Stables, Inc. v. Safeco</u>

16    <u>Title Ins. Co.</u>, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

17    Although the CPA does not define "unfair or deceptive," Washington courts consider an

18    act deceptive if it has the capacity to deceive a substantial portion of the general public, <u>Sing v.</u>

19    <u>John L. Scott, Inc.</u>, 134 Wn.2d 24, 30 (1997), and if it "misleads or misrepresents something of

20    material importance," <u>Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.</u>, 134 Wn. App. 210,

21    226 (2006). An act relating to employment and wages may violate the CPA if it has a capacity to

22    deceive a substantial portion of the public. For example, advertising employment opportunities

23    that contain false representations regarding wages or benefits for which a substantial portion of

24    the public may apply satisfies the first element of a CPA claim. See <u>Kirkpatrick v. Ironwood</u>

25    <u>Commc'ns, Inc.</u>, C05-1428JLR, 2006 WL 2381797 at *12 (W.D. Wash. Aug. 16, 2006).  The

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                          -10-

CPA may sanction employers for these types of false and misleading statements, but it "does not provide a secondary enforcement mechanism for the wage and hour regulations." Aziz v. Knight Transp., 2:12-CV-00904RSL, 2012 WL 3596370 at *2 (W.D. Wash. Aug. 21, 2012). Aziz illustrates the distinction between those claims that have the capacity to deceive a substantial portion of the public and are therefore actionable versus those claims that are not.[4] Like Aziz, the oral contract at issue here and the alleged failure to pay wages in this case affects only defendants' employees (and, more specifically, these two particular employees); such practices are not likely to deceive a substantial portion of the public. Id. Therefore, defendants' motion to dismiss plaintiffs' claim under the CPA is GRANTED.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' CPA claim and their claim for fraud and/or negligent misrepresentation are DISMISSED. Plaintiffs' claims for minimum and overtime wages under the FLSA and their claim for double damages under RCW 49.52.050 and 49.52.070 may proceed.

Dated this 30th day of May, 2014.

*MNR S Lasnik*

Robert S. Lasnik
United States District Judge

---

[4] "To the extent plaintiff is alleging that defendant utilized false and misleading advertisements to attract plaintiff in a manner that had the capacity to deceive Washington State's general labor pool, a viable CPA claim may arise. To the extent plaintiff is alleging that defendant failed to pay its employees wages, overtime, or mileage as required by the wage laws and/or the agreement of the parties, however, those acts affect only the individuals employed by defendant (between 50 and 295 people, according to plaintiff) and are not likely to deceive a substantial portion of the public." Aziz v. Knight Transp., 2:12-CV-00904RSL, 2012 WL 3596370 at *2 (W.D. Wash. Aug. 21, 2012) (citation omitted).

ORDER GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS                                    -11-