UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
SEVER PICU, individually and as )
representative of the Estate of Roberta Picu, )
                                                                 ) No. C14-0330RSL
                      Plaintiffs, )
                                                                )
              v. ) ORDER DENYING DEFENDANT
                                                                 ) MARIANNA BOT AND DUVALL
MARIANNA BOT, DOREL BOT, and ) ADULT FAMILY HOME'S MOTION
DUVALL ADULT FAMILY HOME, ) FOR SUMMARY JUDGMENT
                                                                 )
                    Defendants. )
_____)

        This matter comes before the Court on "Defendants Mariana Bot and Duvall Adult Family Home's Motion for Summary Judgment." Dkt. # 62. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT

party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In short, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

## BACKGROUND

In November 2011, defendant Mariana Bot, the owner of defendant Duvall Adult Family Home ("DAFH"), hired plaintiffs Sever and Roberta Picu to work as care givers at DAFH. Ms. Bot promised to provide plaintiffs with room and board and to pay each plaintiff up to $3,000 per month plus overtime, depending on the number of residents.[2] Plaintiffs were to assist the four to six residents of DAFH with their personal needs (everything from getting out of bed to bathing to finding television shows), assisting the mobility challenged, preparing and serving

---

[1] The Court has not considered or relied upon Exhibits 1 or 3 to the Ninth Declaration of Attorney John Barton. Plaintiffs' motion to strike (Dkt. # 86) is GRANTED in part. The Court has not considered defendants' argument, raised for the first time in reply, that plaintiffs were fully compensated under the oral agreement alleged by plaintiffs: defendants' motion was based on the existence of written contracts which plaintiffs say are forgeries. The motion to strike is DENIED, however, to the extent plaintiffs seek to exclude from evidence the declarations submitted with the reply memoranda. LCR 7(b)(3) expressly authorizes the submission of supporting materials in reply.

[2] Defendants maintain that they hired only Mr. Picu to perform the required services and that they had both Mr. and Mrs. Picu sign written agreements stating that Mr. Picu would receive a flat fee of up to $3,000 per month for 30-35 hours of work per week. Plaintiffs acknowledge that the signatures on the written agreements appear to be theirs, but assert that their employment agreement was oral and that they never saw, discussed, or signed a written contract with defendants at any time.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT                -2-

three meals a day, providing companionship, administering medications and simple tests, cleaning and doing laundry, supervising family and doctor's visits, and responding to emergencies. Plaintiffs were required to live on the premises, and at least one caregiver had to be at the house six days and seven nights per week unless special arrangements were made with Ms. Bot.

Plaintiffs could not complete their assigned tasks in 40 hours/week. Mr. Picu stated at deposition that he and his wife each worked twelve-hour days plus additional hours every night.[3] Ms. Bot lived across the street from DAFH and was at the residence for a couple of hours most mornings. She would tell plaintiffs when they could take their day off each week. Starting with their first paycheck, DAFH paid only Mr. Picu's wages plus room and board for the couple. Plaintiffs asked Ms. Bot to pay Ms. Picu's wages and to pay both plaintiffs for their overtime hours, but were told that DAFH was having financial difficulties and they would get paid later. Ms. Bot fired plaintiffs in November 2012. This litigation ensued.

**DISCUSSION**

Defendants seek dismissal of plaintiffs' claims on the grounds that (a) plaintiffs were independent contractors not entitled to the protections of the Fair Labor Standards Act ("FLSA"), (b) if plaintiffs were employees under the FLSA, they are not entitled to overtime compensation because they were residential employees, (c) plaintiffs are not entitled to liquidated damages under the FLSA, and (d) plaintiffs knowingly submitted to any wage violation and are therefore not entitled to double damages or attorney's fees under the Washington Minimum Wage Act ("MWA"). Each argument is considered below.

---

[3] Plaintiffs' complaint asserts that each plaintiff worked 160 hours/week, but Mr. Picu's testimony cannot support a finding that plaintiffs worked more than 22 hours per day.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -3-

**A. Independent Contractors vs. Employees**

In determining whether an individual is an employee subject to the Fair Labor Standards Act, the Court must ascertain the "economic reality" of the situation. See, e.g., Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 301 (1985). The focal point of the analysis in this context is whether an individual is "economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d 567, 570 (10th Cir. 1994) (quoting Bartels v. Birmingham, 332 U.S. 126, 130 (1947)). Neither a contract provision indicating that one is an independent contractor nor the subjective intent to avoid an employer-employee relationship can override the economic realities of the situation. Real v. Driscoll Strawberry Assoc., Inc., 603 F.2d 748, 755 (9th Cir. 1979); Brennan v. Partida, 492 F.2d 707, 709 (5th Cir. 1974). In evaluating the economic realities, the Ninth Circuit has considered a number of factors, including, but not limited to:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

Real, 603 F.2d at 754.

Evaluating these factors and ascertaining the true nature of a particular situation must be accomplished on a case-by-case basis. "Neither the presence nor the absence of any individual factor is determinative. Whether an employer-employee relationship exists depends 'upon the circumstances of the whole activity.'" Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)). As is often

the case, there are certain aspects of plaintiffs' work that could support a finding of independent contractor and other aspects which make them look like employees. For example, the fact that plaintiffs needed a license and special skills to care for the residents suggests that plaintiffs have – or at least could have – an economic existence that is not necessarily dependent on employment by defendants. But these characteristics are dwarfed by the overall economic realities of the situation as represented by plaintiffs: defendants had the right to, and did, control plaintiffs' performance and schedule, any change in plaintiffs' income was attributable solely to defendants' marketing and sales efforts (not to plaintiffs' entrepreneurial or managerial skills), defendants provided all equipment and materials necessary for the care of the residents and maintenance of the home, many of the services performed by plaintiffs were unskilled, plaintiffs were employed on a continuous basis by a single entity, and the services plaintiffs provided were absolutely essential to the continued operation of defendants' business.

Defendants have not shown that plaintiffs were "independent contractors" as a matter of law. Summary judgment is therefore not appropriate.

**B. Overtime for Residential Employees**

Defendants argue that, even if plaintiffs were employees, their overtime claim is barred by 29 C.F.R. § 785.23, which states:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT            -5-

Section 785.23 offers a simple and "sound methodology for calculating how many hours [residential] employees actually worked within the meaning of FLSA," thereby avoiding "complicated, repetitious, and hard-to-resolve disputes about exactly how much time it took to take care of the [residents] each day." Brigham v. Eugene Water & Elec. Bd., 357, F.3d 931, 942 (9th Cir. 2004); Rudolph v. Metro. Airports Comm'n, 103 F.3d 677, 681 (8th Cir. 1996). The parties are free to agree upon the number of hours the employee will perform duties for the employer versus the number of hours in which he or she is simply enjoying private pursuits on the employer's premises. The parties' agreement must be "reasonable," however, and "take[] into consideration all of the pertinent facts" if an employer is to rely upon it to avoid its record-keeping and overtime obligations. While the "pertinent facts" are likely to vary from one situation to the next, the Ninth Circuit has held that, "at a minimum, an agreement must take into account some approximation of the number of hours actually worked by the employee" or the number of hours in which the employee could reasonably be expected to perform the assigned tasks. Leever v. Carson City, 360 F.3d 1014, 1019 (9th Cir. 2004).

    Defendants maintain that the parties agreed that plaintiffs would provide six days and seven nights of care for up to six individuals in 30-35 hours per week. There is no evidence that defendants made a data- or experience-driven evaluation of how long it would take to provide the specified care or that they were interested in knowing how many hours plaintiffs actually spent performing their duties. There are no provisions in the written contracts for reporting excess hours or for bringing in additional help once plaintiffs reached 35 hours in a given week. According to plaintiffs, they repeatedly informed defendants that they were working far more than 40 hours per week but were ignored. Given the pertinent facts, defendants have not shown that the purported agreement was "reasonable" as a matter of law, and the Court is unable to determine whether § 785.23 applies.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT               -6-

Case 2:14-cv-00330-RSL   Document 106   Filed 12/14/15   Page 7 of 9


**C. Liquidated Damages**

An employer who violates the overtime provisions of the FLSA is liable for the unpaid overtime compensation plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). If the employer shows to the satisfaction of the Court that the violation was in good faith and that the employer had reasonable grounds for believing that its conduct did not violate the FLSA, the Court has the discretion to deny or reduce the award of liquidated damages. 29 U.S.C. § 260. Many of the facts of this case are disputed and prevent summary judgment on the liquidated damages claim. If, as plaintiffs contend, the services they were asked to perform would take significantly longer than 40 hours per week and/or that defendants fabricated the written agreements in the hopes of justifying their failure to pay overtime compensation, it is doubtful that defendants will be able to establish good faith and reasonableness.

**D. Double Damages and Attorney's Fees**

The MWA makes an employer who "wilfully and with intent to deprive the employee of his or her wages" liable "for twice the amount of wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations." RCW 49.52.050 and RCW 49.52.070. Defendants argue that plaintiffs knowingly submitted to the payment arrangement set forth in the parties' agreement, regardless of whether the oral or written version or the agreement governs.

Plaintiffs were previously employed by another adult family home under an agreement that was substantially similar to the written agreements offered by defendants in this case. When their employment terminated, plaintiffs filed wage claims with Labor & Industries and sent the prior employer a demand letter asserting virtually the same claims at issue here, including a demand for $3,000 in wages for each plaintiff and overtime compensation. These claims were

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT                -7-

asserted immediately before plaintiffs agreed to accepted $3,000 per month plus room and board as compensation from defendants. Defendants therefore argue that plaintiffs were aware of the applicable wage act requirements and any shortcomings that might arise from flat monthly payments, yet knowingly submitted to the arrangement proposed by defendants.

There are disputed issues of fact which preclude summary judgment on the MWA claim. A person knowingly submits to the withholding of wages when he or she "deliberately and intentionally deferred to [the employer] the decision of whether [the wages] would ever be paid." Chelius v. Questar Microsystems, Inc., 107 Wn. App. 678, 682 (2001). In plaintiffs' version of events, they learned from their prior experience and negotiated with defendants to obtain two $3,000 per month payments plus overtime. When defendants paid them only half of the negotiated wages, they complained and were told that defendants were having financial difficulties and would pay them in the future. As plaintiffs settled into the routine at DAFH, they realized that their work could not be completed even with both of them working 40 hours per week. Their requests for overtime compensation (and additional requests for Ms. Picu's wages) were ignored or rebuffed. In such circumstances, one could reasonably conclude that plaintiffs never waived their right to the contested payments and that they expected to be paid eventually: there is at least an issue of fact regarding whether plaintiffs knowingly submitted to the non-payment. Durand v. HIMC Corp., 151 Wn. App. 818, 837 (2009).[4]

---

[4] There is, of course, substantial evidence from which one could conclude that plaintiffs knowingly agreed to the compensation scheme set forth in the written agreements, including the existence of the written contracts, the receipt of payments consistent with the written contracts, and that plaintiffs returned to the job after a four month leave of absence on the same terms and conditions that had prevailed before their departure.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -8-

1  For all of the foregoing reasons, the motion for summary judgment filed by defendants
2  Mariana Bot and Duvall Adult Family Home is DENIED.

4  Dated this 14th day of December, 2015.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT               -9-